IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| EDWARD LORENZO HUBBARD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21CV787 |
| | ) | |
| OFFICER T. ROSEBORO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on a motion to dismiss pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure filed by Defendants Officer T. Roseboro, Officer Johnson, and Guilford County Jail ("GCJ"). (Docket Entry 17.) Plaintiff Edward Lorenzo Hubbard, Jr. filed a response. (Docket Entry 24.) Defendants' primary argument is that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (*See* Docket Entry 18 at 4-19.)[1] In support of their motion, Defendants have submitted several affidavits and attachments, which contain information not referenced in the Complaint. (*See* Docket Entries 18-1 through 18-9.) For the following reasons, the Court recommends that Defendants' motion be construed as a motion for summary judgment, and that summary judgment be granted in their favor.

---

[1] Unless otherwise noted, all citations in this recommendation refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

## I. BACKGROUND

Plaintiff initiated this action against Defendants Roseboro, Johnson and the GCJ for violation of his Eighth Amendment rights while Plaintiff was housed as a pretrial detainee at the GCJ. (*See* Complaint, Docket Entry 2.)[2] Specifically, Plaintiff alleges that on May 24, 2020, Roseboro and Johnson both used excessive force by striking Plaintiff several times in his cell although he was "not resisting." (*Id.* at 4.) As a result of the incident, Plaintiff was paranoid and fearful that he would be beat again by prison officials. (*Id.* at 5.) Plaintiff's face was swollen, he suffered cuts, and he hit his head against the bed and wall of the cell. (*Id.*) He was seen by medical staff, but his wounds were not treated. (*Id.*)

In the initial Complaint, Plaintiff states that he did not file a grievance at the GCJ. (*Id.* at 7.) When asked if the grievance process is complete, Plaintiff states that the GCJ "violates the rights of inmates by making inmates request a grievance. If they feel like your situation does not meet qualifications you['re] denied the grievance, which is a violation of civil liberties, and due process." (*Id.*) When asked to state why he did not file a grievance, to state his efforts in informing prison officials of his claim, and to set forth additional information relevant to the exhaustion of his administrative remedies, Plaintiff wrote:

> So, I spoke with Captain and also contacted Prison Legal Services[.] I was denied [a] grievance, [GCJ] stipulates you request a grievance and its [to] their discretion if you qualify to [their] standards.

---

[2] Defendants' motion describes an "Amended Complaint" and "Supplement to Amended Complaint." (*See* Docket Entry 18.) Plaintiff's original Complaint was filed (Docket Entry 2) and later filings were docketed as supplemental pleadings. (*See* Docket Entries 7, 8.) The undersigned will discuss all three filings herein.

2

> I did speak to Captain Johnson and was denied after which I became scared to move further [because] I was in fear of repercussions from staff and inmates.
>
> Once I was denied I contacted Prison Legal Services so that I could have it catalog[u]ed and filed.

(*Id.* at 8.)

After submitting the initial Complaint, Plaintiff filed two additional pleadings. First, he submitted a letter document which mostly discusses concerns beyond the May 24, 2020 excessive force incident and makes minimal reference to either Roseboro or Johnson. (*See* Docket Entry 7 at 1-7.)[3] Plaintiff does attach Inmate Request Forms ("IRF"), which all appear to be filled out by Plaintiff well over a year after the May 24, 2020 incident. (*See id.* at 8-13.)

In Plaintiff's second supplemental pleading, he filed another Prisoner Complaint Form which looks similar to the original Complaint but clarifies that the claims against Defendants are in their official and individual capacities. (*See* Docket Entry 8.) Plaintiff restates the alleged May 24, 2020 excessive force incident and the information regarding exhaustion of his administrative remedies. (*See id.* at 5-9.)

After Defendants' motion for an extension of time to answer was granted, (*see* Docket Entry 10; Text Order dated 11/23/2021), Defendants filed the pending motion to dismiss. (Docket Entry 17.) In support of their motion, Defendants first raise the affirmative defense

---

[3] A portion of this document appears to discuss a subsequent criminal proceeding related to the underlying May 24, 2020 incident. (*Compare* Docket Entry 7 at 1 ("I was manipulated to take the plea by Government officials . . . I was placed on trial for the same incident I was trying to sue the jail for.") *with* Docket Entry 2 at 12 ("Hubbard was charged with malicious conduct by prisoner") and Docket Entry 18 at 4 n. 3 ("Plaintiff was convicted on October 12, 2021 . . . in the Guilford County Superior Court of 'Malicious Conduct by Prisoner' pursuant to N.C. Gen. Stat. § 14-258.4(a) for throwing urine at Officer Roseboro on May 24, 2020[.]") and Docket Entry 18-1 at 3 (State Court Judgment Additional Offenses).)

3

of failure to exhaust administrative remedies. (*See* Docket Entry 18 at 7-19.) The undersigned concludes that because there is no genuine issue of material fact concerning this issue, the Court need only to address this argument herein.

## II. DISCUSSION

### A. Relevant Standard

Defendants' motion to dismiss contends, in pertinent part, that the Court should dismiss Plaintiff's complaint for failure to exhaust his administrative remedies. (*Id.* at 7-19.) In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted,[4] a court must determine whether the complaint is legally and factually sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.; see also Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (citations and quotations omitted). The "court accepts all well-pled facts as true and

---

[4] Although Defendants' section of the brief concerning the argument on exhaustion of administrative remedies does not explicitly set out the Rule 16(b)(6) standard, it correctly notes that this issue should not be treated as a subject matter jurisdiction issue. (*See* Docket Entry 18 at 6 n.5.) The undersigned here, sets forth the Rule 16(b)(6) standard Defendants otherwise set out in their brief, and further construes Defendants' motion as a motion for summary judgment in light of Defendants' materials referenced outside the pleadings.

4

construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

Here, in support of their motion, Defendants have submitted several affidavits and attachments, which contain information related to the GCJ grievance process and Plaintiff's grievance history. (*See* Docket Entries 18-3 through 18-9.) Defendants rely upon such information to demonstrate that Plaintiff did not fully exhaust his administrative remedies regarding the allegations asserted against Roseboro and Johnson related to the May 24, 2020 incident. Because these documents contain information not referenced in the Complaint (and supplements thereto) and because the Court considers this evidence in disposing of the pending motion, Defendants' motion to dismiss should be converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *see also Johnson v. Wolfe*, No. Civ.A. ELH-13-719, 2014 WL 2651184 at *2-3 (D. Md. June 11, 2014) (unpublished) (construing motion to dismiss as a motion for summary judgment where the movant attached several exhibits supporting movant's position which were not excluded by the court); *Morris v. Lowe's*

*Home Centers, Inc.*, No. 1:10-CV-388, 2011 WL 2417046, at *2 (M.D.N.C. June 13, 2011) (unpublished) ("When 'matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56.' ").

When construing a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the [converted] motion." *See* Fed. R. Civ. P. 12(d). "[T]he term 'reasonable opportunity' requires that all parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (alteration, some internal quotation marks, and citation omitted).

The Court finds that Plaintiff was afforded appropriate notice and reasonable opportunity to respond in this matter. First, Defendants submitted evidence in support of their motion to dismiss that was "outside the pleadings, putting [Plaintiff] on notice of possible conversion." *Fornshill v. Ruddy*, No. 95-2490, 89 F.3d 828 (table), 1996 WL 333223, at *2 (4th Cir. June 11, 1996) (unpublished)); *see also Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-261 (4th Cir. 1998) ("Setting aside the caption for a moment, we note that the [D]efendant submitted affidavits and other materials with its motion. . . . Therefore, by operation of the Federal Rules of Civil Procedure, [P]laintiff also should have been on notice that the [D]efendant's motion could be considered by the court to be a summary judgment motion.").

Second, Plaintiff was further put on notice by the *Roseboro* letter[5] sent to him, which advised him:

> Defendant filed a Motion to Dismiss on December 21, 2021, *which may or may not be supported by affidavits.*
>
> You have the right to file a 20-page response in opposition to this motion. *Your failure to respond or, if appropriate, to file affidavits or evidence in rebuttal within the allowed time may cause the court to conclude that the defendant's contentions are undisputed* and/or that you no longer wish to pursue the matter. Therefore, unless you file a response in opposition to the motion, *it is likely your case will be dismissed, or judgment granted in favor of the defendants.* A response to a Motion to Dismiss must be filed within 21 days from the date of service of the Motion upon you.
>
> Any response you file should be accompanied by a brief containing a concise statement of reasons for your opposition and a citation of authorities upon which you rely. *You are reminded that affidavits must be made on personal knowledge, contain facts admissible in evidence and be made by one shown to be competent to testify.* A false statement under oath or under penalty of perjury may be a crime punishable as provided by law.

(Docket Entry 23) (emphasis added).[6] Because the *Roseboro* Letter advised Plaintiff to respond with "affidavits or evidence in rebuttal," he was put on notice that the Court might consider summary judgment.

---

[5] A notice sent pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) generally advises a *pro se* plaintiff of his or her right to file a response to a dispositive motion.

[6] The undersigned notes that the *Roseboro* letter was sent twice to Plaintiff regarding Defendants' motion to dismiss. The first was sent on December 22, 2021, at Plaintiff's previous location, (*see* Docket Entry 20), and once again on January 10, 2022 in response to Plaintiff's Notice of Change of Address, (*see* Docket Entry 23). Neither *Roseboro* letter was returned undeliverable to the Court.

7

Case 1:21-cv-00787-LCB-JLW   Document 26   Filed 08/18/22   Page 7 of 16

Further, Plaintiff filed a response to Defendants' motion and attached documents to said response. (*See* Docket Entry 24.)[7] Under the circumstances, considering Defendants' reliance on affidavits and exhibits and Plaintiff's response, and neither side's indication regarding a need for more discovery, the Court concludes that Defendants' motion should be treated as request for summary judgment under Rule 56. *Gay*, 761 F.2d at 177; *see also Meris v. Yarbrough*, No. 1:21CV617, 2022 WL 2869048, at *11 (M.D.N.C. July 21, 2022) (unpublished) ("Defendant relies on exhibits outside the Amended Complaint in support of his Motion. . . . Accordingly, his Motion more properly constitutes a request for summary judgment than for Rule 12(b)(6) dismissal."); *Herbert v. Saffell*, 877 F.2d 267, 270 (4th Cir. 1989) (treating district court's holding as a grant of summary judgment, where "[t]he [plaintiffs] had ample opportunity to bring forth evidence to show that genuine issues of material fact remained").

## B. Rule 56 Requirements

In analyzing a summary judgment motion, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing the absence of a genuine dispute of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and "any factual assertion in the movant's affidavits will be accepted . . . as being true unless the plaintiff submits his own affidavits or other documentary

---

[7] One document appears to be an attachment to Plaintiff's original Complaint. (*See* Docket Entry 24 at 6.) However, it appears Plaintiff has added hand-written notes on said document. (*See id.*)

8

evidence contradicting the assertion," *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) (internal quotation marks omitted).

"While the Court will view the facts and inferences drawn in the light most favorable to the nonmoving party, the party opposing the motion for summary judgment must put forth specific facts showing a genuine issue for trial." *Dunn v. Aclairo Pharm. Dev. Grp., 401(K) Plan*, No. 1:15-CV-975, 2016 WL 592787, at *2 (E.D. Va. Feb. 10, 2016) (citing *Anderson*, 477 U.S. at 248). In that regard, the nonmoving party cannot rest on conclusory allegations or denials, and "[t]he mere existence of a scintilla of evidence" will not defeat a summary judgment motion. *Anderson*, 477 U.S. at 252, 256.

Here, Defendants argue that they are entitled to dismissal of this case because Plaintiff did not exhaust his administrative remedies before filing this action. (Docket Entry 18 at 7-19.) In support of their motion, Defendants submitted various exhibits, including a declaration from Captain J. Sellers and an affidavit from Officer M. Diehl, both of the Guilford County Sheriff's Office ("GCSO"). (*See* Affidavit of Officer M. Diehl, Docket Entry 18-3; Declaration of Captain J. Sellers, Docket Entry 18-8.) Attaching a copy of the GCSO "'Inmate Handbook'" in effect during all relevant times (*see* Sellers Decl. ¶ 2) and relying on such, Captain Sellers avers that the

> grievance policy and procedure is <u>verbally</u> explained to all inmates, including [Plaintiff], during the orientation process that takes place during the first few days following an inmate's arrival at the Jail. All inmates, including [Plaintiff], are also informed that a copy of the Inmate Handbook contains a <u>written</u> description [of] the grievance policy and procedure, and that the Inmate Handbook is available in all inmate housing units to read and use, upon request. Specifically, the written description of the grievance procedure and policy is found at pages 27 - 29 of [the attached Inmate Handbook].

9

(*Id.* ¶ 3. (emphasis in original).) Captain Sellers further explained that inmates may submit written requests to GCSO staff either (1) "electronically through computer kiosks located in each housing unit," or (2) "in handwriting by asking their Floor Officer for a[n IRF]." (*Id.* ¶ 5.) While inmates in a disciplinary status have no access to the electronic kiosks, they could still submit paper IRFs. (*Id.*) The GCSO retains copies of both electronic grievance requests and the paper IRFs while inmates also receive a copy of their paper IRFs "to maintain for their own records." (*Id.* ¶ 6.)

Captain Sellers further explained the grievance process as described in the Inmate Handbook. (*Id.* ¶¶ 7-8.) Informal resolution of inmate concerns is usually attempted first. (*Id.* ¶ 7.) However, if unsuccessful, the inmate "may submit a request for assistance in resolving the complaint. These requests can be submitted electronically via a kiosk or in handwriting via the paper IRF." (*Id.*) A response is provided by "a higher-ranking Detention Staff Member." (*Id.*) "If the inmate is not satisfied with the response to his or her electronic or handwritten request, then the inmate must request a Grievance Form. Requests for Grievance Forms can also be submitted electronically via a kiosk or through a handwritten IRF." (*Id.*)

Captain Sellers further states that:

> An inmate's request for a Grievance Form will be reviewed by Detention Staff. If the inmate has previously attempted to resolve the complaint (albeit unsuccessfully) . . . and identifies a complaint that is subject to the grievance process . . ., the inmate will be issued a Grievance Form by the Shift Commander or Classification/Grievance Officer, who shall affix a date/time stamp to the Grievance Form. All forms associated with the Grievance Policy are produced and distributed to inmates in

10

> "carbon copy" format, allowing the inmate to retain for his/her
> records a copy of each form submitted as a part of this process.

(*Id.* ¶ 8.) The Inmate Handbook sets out matters which an inmate may file a grievance including "actions of Jail Staff or other inmates." (*See id.* ¶ 9; *see also* Docket Entry 18-9 at 28-29.)

Regarding the timing of grievances, "an inmate must submit his/her Grievance Form within three days from the date of the incident complained of, or within three days of learning that grounds for a complaint exist." (Sellers Decl. ¶ 10.) Also, "[a] grievance will . . . be deemed timely if the inmate initiates the grievance process . . . within three days of the incident complained of and then submits his/her Grievance Form within three days of receiving that form from the Jail's Staff." (*Id.*)

After receiving the grievance form, the Classification/Grievance Officer will forward it to the Division Commander, who "has twenty-one days to respond to the grievance." (*Id.* ¶ 11.) If dissatisfied with the response from the Division Commander, the inmate can then appeal to the Bureau Commander. (*Id.* ¶ 12.) The Inmate Handbook indicates that "[t]he response from the Bureau Commander shall be the final step in the appeal process." (Docket Entry 18-9 at 29.) As to medical requests, inmates may request a sick call form "from the nurse during medical rounds." (Sellers Decl. ¶ 13; *see also* Docket Entry 18-9 at 21.) "Detention Officers do not provide or receive sick call forms." (Sellers Decl. ¶ 13; *see also* Docket Entry 18-9 at 21-22.) Although the Inmate Handbook was updated, Captain Sellers contends that the grievance procedures that were effective April 30, 2019, were nearly identical to procedures effective during the separate periods of incarceration that Plaintiff experienced

11

throughout his time at the GCJ between October 6, 2019, and November 16, 2021. (Sellers Decl. ¶ 14.)

Officer M. Diehl, "the GCSO's Court Liaison Officer," also provided an affidavit in support of Defendants' Motion. (Docket Entry 18-3.) Officer Diehl "maintain[s] records of the [IRFs] and Inmate Grievance Forms at the [GCJ]." (Id. ¶ 1.) He personally searched through GCJ records and attached to his affidavit complete copies of all handwritten, paper IRFs in the possession of the GCSO that were submitted by Plaintiff at the GCJ since the date of Plaintiff's first booking on February 28, 2019 through the date of his most recent release on November 16, 2021. (Id. ¶¶ 3, 5.) The exhibit includes 3 IRFs all dated in October 2021. (See Docket Entry 18-4.) Officer Diehl notes that three of the paper IRFs attached to Plaintiff's supplemental pleading "were not archived" at the GCJ. (Diehl Aff. ¶ 6; see also Docket Entry 7 at 8, 10, 11.)

Officer Diehl also attached "true, accurate, and complete copies of all electronically-submitted kiosk requests submitted by Plaintiff at [the GCJ]" between February 28, 2019 and November 16, 2021. (Diehl Aff. ¶ 7.) "This exhibit consists of 51 pages and the requests have been placed in chronological order." (Id.) Officer Diehl also attached "the only Grievance Form issued to Plaintiff" between February 28, 2019 and November 16, 2021. (Id. ¶ 8.) It was issued on October 4, 2021 (see Docket Entry 18-6), but "Plaintiff refused to sign acknowledging receipt of the Grievance Form and never filed or returned it." (Diehl Aff. ¶ 8.)

Thus, upon review of the above-mentioned documents attached to Officer Diehl's affidavit, he "confirm[ed] that . . . Plaintiff never requested a Grievance Form . . . concerning

12

the May 24, 2020 incident" nor did he "file[] a Grievance Form concerning the May 24, 2020 incident." (*Id.* ¶ 9 (emphasis omitted).) In fact, per Officer Diehl's review, none of the first three exhibits to his affidavit, "nor the 6 pages of IRFs attached" to Plaintiff's first supplemental pleading relate to the May 24, 2020 incident. (*Id.*)

In response to Defendants' motion, Plaintiff in pertinent part and in cursory fashion, simply states, "I was denied a grievance [and] mistreated as well." (Docket Entry 24 at 3.) Defendants filed a reply contending that "[i]f a *pro se* inmate Plaintiff could defeat a Motion to Dismiss based on nothing more than the mere allegation that he/she did not receive a grievance, then the PLRA's exhaustion requirement would be rendered meaningless." (Docket Entry 25 at 3.)

### Failure to Exhaust Administrative Remedies

The PLRA requires inmates to properly exhaust administrative remedies before filing civil actions challenging the conditions of their confinement. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It is well-settled by now that Section 1997e's exhaustion requirement is mandatory. *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Woodford*, 548 U.S. at 90-91 (stating that the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules"); *Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d 674, 676-77 (4th Cir. 2005) (citing *Porter*, 534 U.S. at 524). The defendant bears the burden of establishing that an inmate has filed to exhaust his or her

13

administrative remedies. *Jones*, 549 U.S. at 216. Moreover, the Court recognizes that a prisoner's failure to exhaust administrative remedies may be excused when prison officials hinder, delay, or otherwise prevent prisoners from availing themselves of administrative procedures. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010).

The PLRA exhaustion requirement is satisfied when an inmate "ha[s] utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." *Moore*, 517 F.3d at 725 (quoting *Woodford*, 548 U.S. at 88). Therefore, "the relevant prison's grievance procedures determine the steps that a prisoner must take to meet his exhaustion obligations." *Meris*, 2022 WL 2869048, at *11 (citation omitted). Ultimately, "[b]ecause prisoners must comply with the applicable grievance policy, they fail to properly exhaust [their administrative remedies] when they miss grievance policy deadlines." (*Id.*)

A review of Plaintiff's Complaint, supplemental pleadings, and the exhibits attached to Defendants' motion demonstrates that Plaintiff did not exhaust his administrative remedies. The evidence demonstrates that Plaintiff never requested a Grievance Form via a handwritten, paper IRF or by kiosk request concerning the May 24, 2020 incident involving Roseboro and Johnson that is the subject of this lawsuit. Plaintiff also never filed a Grievance Form concerning the May 24, 2020 incident. Furthermore, none of the unarchived IRFs attached to Plaintiff's supplemental pleading relate to the May 24, 2020 incident involving Roseboro or Johnson. (*See* Docket Entry 7 at 8, 10, 11.)

While Plaintiff does not dispute that he did not file a grievance, he instead alleges and argues that he was denied his request for a Grievance Form regarding the subject incident that

14

occurred on May 24, 2020. (*See* Docket Entry 2 at 7-8; Docket Entry 7 at 3, 7; Docket Entry 8 at 8-9; Docket Entry 24 at 3.) However, there is no documented request for a Grievance Form on or within *three* days of the May 24, 2020 incident, or within three day of a response to a related IRF as required by the Inmate Handbook. (*See* Docket Entry 18-9 at 28 ("The inmate must file the grievance within three (3) days from the date of the incident, the discovery of the incident, when they reasonably should have discovered the incident, giving rise to the complaint, or within three (3) days of receipt of a response to an inmate request form.").) Rather, the first time Plaintiff documented a request for a grievance was on June 27, 2020 (*see* Docket Entry 18-5 at 35), approximately a month after the May 24, 2020 incident, and according to Officer Diehl, did not relate to the May 24, 2020 incident but "rather an incident where Plaintiff failed to follow orders and was allegedly not afforded the opportunity to write a statement before his disciplinary hearing concluded." (Diehl Aff. ¶ 10; *see also* Docket Entry 18-7.)

Furthermore, the only Grievance Form issued to Plaintiff was on October 4, 2021, well over a year after the May 24, 2020 incident, and that grievance form was sought to grieve a separate alleged assault incident. (*See* Diehl Aff. ¶ 8; Docket Entry 18-4 at 1; Docket Entry 18-6.) In any event, "Plaintiff refused to sign acknowledging receipt of the Grievance Form and never filed or returned it." (Diehl Aff. ¶ 8.) Despite Plaintiff's contentions that he was denied his ability to grieve the May 24, 2020 incident, he has produced no evidence of such even though "[a]ll forms associated with the Grievance Policy are produced and distributed to inmates in 'carbon copy' format, allowing the inmate to retain for his/her records a copy of each form submitted as a part of th[e] process." (Sellers' Decl. ¶ 8.)

15

Ultimately, there is no evidence that Plaintiff completed or appealed any grievances related to the May 24, 2020 incident, nor is there evidence that Defendants hindered or interfered with Plaintiff's ability to exhaust his administrative remedies. Because there is no genuine issue of material fact as to whether Plaintiff has exhausted his administrative remedies, Defendants' motion should be granted, and Plaintiff's Complaint (and supplements thereto) should be dismissed without prejudice.[8]

## III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss (Docket Entry 17) be converted to a Motion for Summary Judgment, and be **GRANTED**, to the extent that Plaintiff's Complaint (and supplements thereto) be dismissed without prejudice for failure to exhaust administrative remedies.

_____
Joe L. Webster
United States Magistrate Judge

August 18, 2022
Durham, North Carolina

---

[8] Even if Plaintiff had exhausted his administrative remedies, the Complaint would still be subject to dismissal against the GCJ because it is not an entity capable of being sued in federal court. *See Willingham v. Buncombe Cnty. Jail*, No. 1:19-CV-59-FDW, 2019 WL 1331753, at *1 (W.D.N.C. Mar. 25, 2019) (unpublished) ("[T]he Buncombe County Jail is not a legal entity capable of being sued, nor is it a 'person' within the meaning of 42 U.S.C. § 1983."); *Ellenburg v. Henderson Cnty. Jail*, No. 1:14-CV-290-FDW, 2015 WL 2127229, at *4 (W.D.N.C. May 6, 2015) (unpublished) ("[T]he Henderson County Jail is not a distinct legal entity capable of being sued.").